1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. C 08-5740 CW

OPHELIA LEE,

       Plaintiff,

    v.

EDEN MEDICAL CENTER, SAN LEANDRO
HOSPITAL CAMPUS, SUTTER HEALTH
AFFILIATE and DOES 1 TO 20,

       Defendant.
_____/

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

    This case arises from the termination of Plaintiff's employment with Defendant Eden Medical Center (EMC). EMC moves for summary judgment on all the claims in Plaintiff Ophelia Lee's First Amended Complaint (FAC). Plaintiff opposes the motion. The matter was taken under submission on the papers. Having considered all the papers filed by the parties, the Court grants the motion for summary judgment.

BACKGROUND

    EMC is a 302-bed, not-for-profit hospital. Plaintiff is of Chinese descent. In August, 2004, EMC hired Plaintiff as a per diem Registered Nurse. Two months later, Plaintiff began working for EMC as a regular, full-time nurse. Plaintiff's employment with EMC was governed by the terms of a collective bargaining agreement

(CBA) between EMC and the California Nurses Association.

In July, 2006, Plaintiff was transferred to EMC's medical/surgical (M/S) unit, an acute care facility. Before her transfer to the M/S unit, Plaintiff received good work evaluations and was praised by patients' families and colleagues. According to Plaintiff,[1] on the M/S unit, she was ill-treated by charge nurse Milagros Reynosa and other staff, who were of Filipino descent. The staff called Plaintiff "garbage," and when Plaintiff asked Reynosa for help, she called Plaintiff "stupid Chinese." Reynosa frequently changed Plaintiff's patient assignments during her eight-hour shift, taking away from Plaintiff the patients she had treated and assigning different patients. Sometimes Reynosa changed Plaintiff's assignments five times in a day, but she did not change the assignments of Filipino nurses. This increased Plaintiff's work load and increased the risk that Plaintiff would make medical errors. Plaintiff complained about this harassment to her direct supervisor, floor manager Rose Del Rosaria, who did not act on Plaintiff's complaints.

On October 17, 2006, Plaintiff was placed on a performance improvement plan due to two occurrences of improper medication administration, Plaintiff's difficulty in completing documentation in a timely manner, and doctors' complaints that it was difficult to understand Plaintiff. The plan required Plaintiff to attend a class to improve her English language skills. On December 7, 2006

---

[1]Plaintiff fails to submit admissible evidence to support her allegations about discrimination and harassment. However, even if Plaintiff's allegations are taken as true, her claims fail. Therefore, for the purposes of this motion, Plaintiff's allegations are considered as evidence.

and on March 8, 2007, the plan was extended.

On March 10, 2007, Plaintiff told Human Resource Director Phyllis Weiss about the racial discrimination Plaintiff felt she was experiencing on the M/S unit. According to Ms. Weiss, Plaintiff complained that Ms. Del Rosaria referred her to an English improvement class, extended her performance plan, treated her disrespectfully by taking a call during their meeting, and never complimented her although she complimented other employees. Later in March, 2007, Plaintiff complained to Ms. Weiss that Ms. Del Rosaria was discriminating against her by changing her patient assignments several times during one shift. Ms. Weiss investigated this charge and found that the number of changes were not unusual for an acute care unit which has multiple patients admitted and released throughout the day and that Plaintiff's patient assignments had not been changed more than other nurses' assignments.

On April 13, 2007, Plaintiff gave Ms. Weiss a letter stating that Filipino nurses were discriminating against her on the basis of her race by yelling for her instead of using the pager, by making false calls for her, by calling her "garbage," and by laughing at her and humiliating her at the nursing station. In the letter, Plaintiff also complained about the patient re-assignments and stated that the nurses wanted to have other non-Filipino staff fired.

Also, on April 13, 2007, Plaintiff informed Veronica Bayduza, EMC Administrator, that she had seen an individual named Tony Chen stalking her. According to Plaintiff, Mr. Chen had worked with her at a previous place of employment, he had been stalking and

harassing her for years, she had reported this to the police and she had a judicial restraining order against him. Plaintiff told Ms. Bayduza that she thought Mr. Chen also was following Dr. Jeffrey Silvers, a physician at EMC, because she had seen Dr. Silvers in the traffic ahead of Mr. Chen. Both were riding motorcycles. Plaintiff said she was concerned that Mr. Chen would come to EMC to harass her or Dr. Silvers. Plaintiff gave Ms. Bayduza copies of requests for restraining orders that Plaintiff had filed against Mr. Chen. Plaintiff said she was not able to serve these papers on Mr. Chen because she did not know his address.

Ms. Bayduza informed Ms. Weiss of Plaintiff's statements and Ms. Weiss requested that Plaintiff meet with her. Plaintiff repeated the same statements to Ms. Weiss. She added that Mr. Chen had been stalking her for over nine years, even when she was on vacation in Australia. Plaintiff repeated her concern that Mr. Chen was now stalking Dr. Silvers and added that Dr. Silvers had not been able to eat or leave his office for a week and had cancelled a date with Plaintiff to go shopping in Oakland because of his fear of Mr. Chen. She also said that Mr. Chen had prevented Dr. Silvers from filing for a divorce. Plaintiff added that she had been stalked by another man named Keeney Tawn. Plaintiff provided Ms. Weiss with copies of documents she had written about Mr. Chen and Mr. Tawn. Weiss Dec., Ex. D, Plaintiff's request for restraining order against Mr. Tawn, Ex. E, Plaintiff's request for restraining order against Mr. Chen, Ex. F, Plaintiff's letter to police regarding Mr. Chen stalking Dr. Silvers.

Upon investigation, Ms. Weiss found that Dr. Silvers was on

4

vacation, knew nothing about Mr. Chen, never rode a motorcycle, was married with no intention of filing for divorce and had not had any communication with Plaintiff outside of work.

As a result of her conversation with Plaintiff, Ms. Weiss became concerned about Plaintiff's mental fitness to work as a nurse and asked Plaintiff to visit the EMC Occupational Health Clinic for evaluation. Ms. Weiss placed Plaintiff on paid leave pending additional information. Plaintiff was evaluated by Dr. Scott Petersen of the EMC Occupational Health Clinic who found that she was not fit for duty and referred her for a psychiatric evaluation. Weiss Dec., Ex. C.

On April 16, 2007, Dr. Chao Ho, Plaintiff's primary care physician, wrote a note stating that Plaintiff's "physical and mental health condition is normal, and she is eligible to work as she is entitled to." Weiss Dec., Ex. H. (In a declaration dated July 31, 2009, Dr. Ho states that he is not trained or licensed as a psychologist or mental health care provider, he did not perform any psychological testing on Plaintiff, and his letter was based on his general observation of Plaintiff.)

On April 16, 2007, Plaintiff gave Dr. Ho's note to Ms. Weiss. Ms. Weiss informed Plaintiff that she must have a psychiatric evaluation before she could return to work and Plaintiff agreed. On that same day, Plaintiff was evaluated by Dr. Boris Zhalkovsky, a psychiatrist, and Dr. James Chessing, a consulting psychologist. In his report, Dr. Zhalkovsky stated that Plaintiff expressed "strong delusional ideas and was under the very strong impression that constantly she was followed and approached by a stranger. . . . According to the patient, this problem bothered her for a

number of the past years; however, at the present time, this problem became much worse . . . ."  Dr. Zhalkovsky noted that, although Plaintiff denied any problems, her belief that she was constantly being followed was very significant, to the extent that she tried to obtain a restraining order to protect herself.  Dr. Zhalkovsky's impression of Plaintiff was that she had a psychotic disorder, manifested by strong paranoid delusions.  He recommended treatment with anti-psychotic medications.  However, Plaintiff refused treatment.  Dr. Zhalkovsky opined that "it will be very difficult for Miss Lee to work as a registered nurse if sufficient treatment is not provided."  Weiss Dec., Ex. H.

On a referral from Dr. Ho, Plaintiff saw psychiatrist Dr. Ian Webber to determine whether she showed any evidence of a psychiatric disorder.  In his April 20, 2007 report, Dr. Webber wrote, "From this psychiatric assessment there is no basis for believing that Ophelia Lee has a substantive psychiatric disorder."  Plaintiff's Ex. L.  (At his deposition, Dr. Webber testified that his conclusion was based on a one-hour meeting with Plaintiff, that he was not asked to determine if she was fit for duty and would need information from her employer to make such a determination.  Webber Depo. at 9, 11, 13, 16-17, 26, and 50.  Dr. Webber testified that, when he wrote the report, he did not know about Plaintiff's stalking claims, and such information would have raised concerns.  Webber Depo. at 41-42.)

On April 23, 2007, Plaintiff and Ms. Weiss met with a union representative.  They agreed that Plaintiff would be reevaluated by a mental health care professional recommended by Dr. Ho and that EMC would be permitted to share information with this doctor.  Dr.

Ho referred Plaintiff to Dr. Stuart Pickel, a psychiatrist. Plaintiff met with Dr. Pickel, but he withdrew because he felt threatened by Plaintiff. Weiss Dec. ¶ 27.

Thereafter, the parties agreed that Plaintiff would be evaluated by Dr. Joshua Kirz, a psychologist. In his August 6, 2007 report, Dr. Kirz observed that Plaintiff, when not talking about Mr. Chen or Mr. Tawn, was clear and coherent with little evidence of psychiatric interference. He observed that Plaintiff's mood and affect were slightly agitated when she discussed Mr. Chen or Mr. Tawn, but otherwise was within normal limits. Dr. Kirz found that "Ms. Lee's level of insight and judgment appeared grossly intact as far as day-to-day life, but clearly impaired regarding issues relating to Chen, Tawn, and some of her physician colleagues. . . . She appears to have no insight that her beliefs about these individuals may be inaccurate, despite being confronted with factual information to the contrary." Dr. Kirz's diagnosis was delusional disorder, persecutory type. Dr. Kirz concluded that, because Plaintiff refused psychiatric treatment, her symptoms were likely to wax and wane and "her psychiatric condition will predictably continue to cause impairment at work. Further, her job duties entail tasks critical to patient safety. For all of the above reasons, she is not psychiatrically fit for duty." Weiss Dec., Ex. O.

On September 13, 2007, Ms. Weiss sent Plaintiff a letter informing her that Dr. Kirz had determined she was not fit for duty, and that she would be placed on medical leave of absence through December, 2007. Ms. Weiss also informed Plaintiff that she could return to work if she was deemed fit for duty by Dr. Kirtz or

7

a mutually agreed upon psychiatrist.

On November 9, 2007, Plaintiff, without the agreement of EMC, was evaluated by Dr. William Spivey, a psychologist. Dr. Spivey noted that Plaintiff's complaints of harassment on the job could be true, as could her complaints about being stalked by a man. He concluded that Plaintiff "has not demonstrated substantial evidence that she suffers from a major psychiatric disorder." Weiss Dec., Ex. Q. (At his deposition, Dr. Spivey testified that he did not have sufficient information to make an evaluation of Plaintiff's fitness for duty. Spivey Depo. at 9, 11.)

After giving Dr. Spivey's report to Ms. Weiss, Plaintiff did not communicate with Ms. Weiss or return Ms. Weiss' telephone calls. On January 10, 2008, Ms. Weiss sent Plaintiff a letter stating that EMC would terminate her employment unless it received, by January 18, 2008, a medical clearance for her to return to work, or a request for an extension of her medical leave. Weiss Dec., Ex. R. Plaintiff did not respond to this letter. On January 18, 2008, EMC terminated Plaintiff's employment.

In her FAC, Plaintiff alleges the following causes of action: (1) breach of implied contract of continued employment; (2) breach of implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) wrongful termination in violation of public policy; (5) breach of implied covenant not to terminate except for good cause; (6) defamation; (7) violation of California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12940(a), (b) and (j) for discrimination and harassment based upon race and retaliation for complaining about the discrimination and harassment; and (8) violation of FEHA, Cal.

Gov't Code § 12940(k) for failure to investigate and prevent discrimination.

EVIDENTIARY OBJECTIONS

Defendant objects to some of the statements in Plaintiff's opposition, to many of the exhibits submitted with her opposition and to the declaration of John Chow, submitted after Defendant filed its reply. The Court has reviewed these evidentiary objections and overrules them as moot. As discussed below, even considering Plaintiff's allegations as admissible evidence, her claims fail..

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210

1   F.3d at 1105.  If the moving party produces such evidence, the

2   burden then shifts to the non-moving party to produce specific

3   evidence to show that a dispute of material fact exists.  <u>Id.</u>

4                              DISCUSSION

5   I. LMRA Preemption

6        Defendant argues that Plaintiff's first, second and fifth

7   causes of action, which arise from an implied employment contract

8   between Plaintiff and EMC, and her third cause of action for

9   intentional infliction of emotional distress, are preempted by

10  § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.

11  § 185.  Plaintiff does not address this argument in her opposition.

12       Where there is a collective bargaining agreement between an

13  employer and a union, state law claims requiring interpretation of

14  the terms of that agreement are preempted by the exclusive federal

15  jurisdiction of the LMRA.  <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S.

16  202, 213 (1985); <u>Cramer v. Consolidated Freightways, Inc.</u>, 255 F.3d

17  683, 689-90 (9th Cir. 2001).  That a plaintiff has not framed his

18  or her complaint so that it explicitly refers to a collective

19  bargaining agreement will not defeat federal preemption.

20  <u>International Bhd. of Elec. Workers v. Hechler</u>, 481 U.S. 851, 859

21  n.3 (1987); <u>Cook v. Lindsay Olive Growers</u>, 911 F.2d 233, 237 (9th

22  Cir. 1990).  Rather, if a plaintiff's claims are founded on rights

23  created by a collective bargaining agreement or are "'substantially

24  dependent on analysis of a collective-bargaining agreement'" and

25  can only be resolved by referring to the terms of a collective

26  bargaining agreement, they are preempted.  <u>Caterpillar Inc. v.</u>

27  <u>Williams</u>, 482 U.S. 386, 394 (1987); <u>Cook</u>, 911 F.2d at 237.  Even

28  state tort claims may be preempted by § 301, if the alleged torts

11

arise from rights and duties created by a collective bargaining
agreement.  <u>Allis-Chalmers</u>, 471 U.S. at 211.  However, tort claims
are not preempted when they allege a breach of duties and rights
existing independently of a collective bargaining agreement and the
factual inquiry necessary to resolve the claims does not "turn on
the meaning of any provision of a collective-bargaining agreement."
<u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 407 (1988).

    A. Contract Claims

    Plaintiff's contract claims allege an implied contract, based
on Defendant's oral representations, actions and conduct, that
Plaintiff would be employed for an indefinite period, to continue
as long as she performed her job satisfactorily.  Plaintiff alleges
that Defendant breached this implied contract by terminating her
without good cause and by forcing her to undergo invasive medical
examinations in retaliation for her attempts to report Defendant's
illegal activity.

    Section 21 of the CBA provides that EMC shall not have the
right to discharge or discipline a covered employee except for just
cause and defines a grievance as any dispute over the
interpretation or application of the CBA, or any discharge or
suspension of an employee.  Section 22 of the CBA provides an
employee grievance procedure.  The issues raised in Plaintiff's
contract claims concerning whether there has been a breach of
Plaintiff's employment agreement or any implied covenants arise
under the just cause provision of the CBA and are subject to its
grievance and arbitration provisions.  Because Plaintiff's contract
claims require interpretation of provisions of the CBA, they are
preempted by the LMRA.  Judgment will be granted in favor of

12

Defendant on these claims.

B. Intentional Infliction of Emotional Distress (IIED)

Preemption of IIED claims by the LMRA depends upon whether the CBA governs the offending behavior. <u>Cook</u>, 911 F.2d at 239-40. When the CBA governs the behavior, and the underlying claims are preempted, the IIED claims relying upon them are also preempted. <u>Id.</u> In contrast, when the underlying claims are not preempted, neither are the claims for IIED. <u>Id.</u>; <u>Tellez v. Pac. Gas and Elec. Co., Inc.</u>, 817 F.2d 536, 538-39 (9th Cir. 1987).

Plaintiff's IIED claim is based upon EMC's alleged breach of her implied employment contract, ordering her to undergo counseling without good cause and ignoring her pleas to end her co-workers' discriminatory and harassing conduct.

To the extent that the IIED claim is based upon the breach of the employment contract or EMC's requirement that Plaintiff undergo psychiatric testing, it would also require interpretation of Section 21 of the CBA, providing that EMC cannot discharge or assess disciplinary action except for just cause. Therefore, this part of the IIED claim is preempted by the LMRA.

State claims based upon discrimination are not preempted by the LMRA. <u>Detabali v. St. Luke's Hosp.</u>, 482 F.3d 1199, 1202 (9th Cir. 2007). Thus, to the extent that Plaintiff's IIED claim rests on discrimination, it is not preempted. However, this claim fails for another reason.

The elements of a cause of action for IIED are (1) extreme and outrageous conduct; (2) intended to cause or done in reckless disregard for causing; (3) severe emotional distress; and (4) actual and proximate causation. <u>Cervantez v. J.C. Penney Co.,</u>

Inc., 24 Cal. 3d 579, 593 (1979). The conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community," id., and the distress so severe "that no reasonable [person] in a civilized society should be expected to endure it." Fletcher v. Western Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970).

As discussed below, Plaintiff has failed to produce evidence of harassment, discrimination or retaliation sufficient to support her claims under FEHA. Although Plaintiff has alleged conduct that is inappropriate, she has not described outrageous conduct beyond all bounds of what is accepted in a civilized society. Thus, summary judgment on this claim will be granted in favor of Defendant.

II. Defamation Claim

Plaintiff's defamation claim alleges that Defendant made statements to EMC staff and neighboring hospitals that she was mentally unbalanced and unfit to be a nurse and, as a result of these statements, Plaintiff's reputation for honesty, integrity, virtue and sanity was adversely affected so that it was impossible for her to obtain subsequent employment. Plaintiff fails to submit any evidence to support her allegations. At her deposition, Plaintiff admitted that she did not know who made the alleged defamatory statements. Ms. Weiss declares that she has discussed the circumstances of Plaintiff's leave of absence and termination only with the evaluating physicians and their assistants, the California Board of Registered Nurses and EMC management personnel and counsel.

Defendant argues that any communication Ms. Weiss made about

14

Plaintiff's mental health was privileged and, in the alternative, that the statements are not actionable because they are true.  In her opposition, Plaintiff does not address whether the communications were privileged, but argues that EMC's statements were false and were motivated by racial discrimination.

Defamation consists of either libel or slander.  Cal. Civ. Code § 44.

> Slander is a false and unprivileged publication, orally
> uttered, . . . which . . . tends directly to injure [a
> person] in respect to his office, profession, trade or
> business, . . . by imputing to him general
> disqualifications in those respects which the office or
> other occupation peculiarly requires . . .

Cal. Civ. Code § 46.  Libel is "a false and unprivileged publication by writing [or] printing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code § 45.

A defamatory statement is subject to a conditional privilege if made

> [i]n a communication, without malice, to a person
> interested therein, (1) by one who is also interested, or
> (2) by one who stands in such relation to the person
> interested as to afford a reasonable ground for supposing
> the motive for the communication to be innocent, or
> (3) who is requested by the person interested to give the
> information.

Cal. Civ. Code § 47(c).  "Interested persons," as defined by the statute, are "a communicator and a recipient with a common interest, although to be protected the communication must be one 'reasonably calculated to further that interest.'"  Cuenca v. Safeway San Francisco Employees Fed. Credit Union, 180 Cal. App. 3d 985, 995 (1986).  The privilege applies to job references requested

15

by other employers, <u>Neal v. Gatlin</u>, 35 Cal. App. 3d 871, 87 (1973), and to employers' statements to its employees regarding the reason for the termination of another employee, <u>King v. United Parcel Serv., Inc.</u>, 152 Cal. App. 4th 426, 440 (2007). The conditional privilege is defeated by a showing of malice. <u>Sanborn v. Chronicle Publishing Co.</u>, 18 Cal. 3d 406, 413 (1976).

Ms. Weiss admittedly made statements about Plaintiff's mental health to EMC's management and counsel and to the Board of Registered Nurses. Because these parties are interested persons as defined by the statute, Ms. Weiss' statements were privileged and are not actionable. Plaintiff asserts that other employers knew of Defendant's view of her mental health because she could not obtain subsequent employment as a nurse. Even if this were true, it would not defeat Ms. Weiss' privilege to respond to requests for references from prospective new employers.

Plaintiff's argument that Defendant's statements about her mental health were motivated by racial animus also fails. Plaintiff does not allege that Ms. Weiss harbored racial animus against her. She alleges only that the Filipino staff on the M/S unit harbored such racial animus. She does not present evidence, or even argue, that the Filipino staff made the defamatory statements. Therefore, there is no evidence that Defendant or any of its employees made any statement about her mental health in an effort to discriminate against her based on her race or national origin.

Because Plaintiff fails to raise a triable issue of material fact on her defamation claim, summary judgment on this claim will be granted to Defendant.

III. FEHA Claims

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), and <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981), the Supreme Court established a burden-shifting framework for evaluating the sufficiency of plaintiffs' evidence in employment discrimination suits.  The same burden-shifting framework is used when analyzing claims under FEHA. <u>Guz v. Bechtel Nat'l Inc.</u>, 24 Cal. 4th 317, 354 (2000); <u>Bradley v. Harcourt, Brace and Co.</u>, 104 F.3d 267, 270 (9th Cir. 1996).  Within this framework, plaintiffs may establish a <u>prima facie</u> case of discrimination by reference to circumstantial evidence; to do so, plaintiffs must show that they are members of a protected class; that they were qualified for the position they held or sought; that they were subjected to an adverse employment decision; and that they were replaced by someone who was not a member of the protected class or that the circumstances of the decision otherwise raised an inference of discrimination. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993) (citing <u>McDonnell Douglas</u> and <u>Burdine</u>).  Once plaintiffs establish a <u>prima facie</u> case, a presumption of discriminatory intent arises. <u>Id.</u>  To overcome this presumption, defendants must come forward with a legitimate, non-discriminatory reason for the employment decision. <u>Id.</u> at 506-07.  If defendants provide that explanation, the presumption disappears and plaintiffs must satisfy their ultimate burden of persuasion that defendants acted with discriminatory intent. <u>Id.</u> at 510-11.

In order to do so, plaintiffs must produce "specific, substantial evidence of pretext." <u>Steckl v. Motorola, Inc.</u>, 703 F.2d 392, 393 (9th Cir. 1983).  To survive summary judgment,

plaintiffs must introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for discrimination. <u>Id.</u> "[I]n those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under <u>McDonnell Douglas</u>, plaintiff has failed to raise a triable issue of fact." <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 890 (9th Cir. 1994).

A. Discrimination

Defendant first argues that Plaintiff fails to establish a prima facie case of discrimination because she was not performing competently on her job. However, Plaintiff provides sufficient evidence of her competence to raise a disputed issue of fact. Defendant concedes that placing Plaintiff on administrative leave and eventually terminating her were adverse employment actions. Plaintiff is in a protected class. Although Plaintiff has not provided evidence that she was replaced by someone not in the protected class, or other circumstances raising an inference of discrimination, for this motion, the Court will assume an inference of discrimination has been raised and Plaintiff has stated a prima facie case of racial discrimination.

Defendant has established that it had a legitimate business reason for placing Plaintiff on medical leave by submitting psychological evaluations of her unfitness for duty based upon her discredited claims, such as that she was being stalked by two men, and that Dr. Silver was also being stalked by one of these men and lived in fear of the stalker. Defendant also has established a legitimate business reason for terminating Plaintiff's employment

for failing to fulfill its legitimate requirement to obtain medical clearance to return to work from an agreed-upon mental health professional or to request an extension of her medical leave.

Therefore, to survive summary judgment on her FEHA claim, Plaintiff must submit specific, substantial evidence of pretext. She has failed to do so.

Plaintiff asserts that Ms. Weiss lied to the evaluating doctors about Plaintiff's claims about the stalking of herself and Dr. Silver. However, documents in Plaintiff's handwriting establish that she made such claims. <u>See</u> Weiss Dec., Exs. D, E, and F. Plaintiff also argues that Defendant had decided to terminate her employment on April 13, 2007, before receiving any reports about her fitness for duty. However, she fails to submit evidence in support of this contention. Plaintiff also argues that pretext is shown by Defendant's refusal to allow her to return to work based on the positive reports she received from Drs. Ho, Webber and Spivey. However, Defendant made clear to Plaintiff that she must obtain a fitness-for-duty report from a mutually agreed-upon mental health professional who was in possession of the facts. Therefore, this argument does not establish pretext.

Plaintiff has also failed to substantiate her claim that Ms. Weiss instructed doctors to find Plaintiff mentally ill out of racial animus or in retaliation for her April 13, 2007 letter. Although Ms. Weiss did describe Plaintiff's behavior to the doctors conducting Plaintiff's fitness-for-duty evaluation, the doctors stated that input from the employer is necessary to perform a reliable fitness-for-duty evaluation.

Because Plaintiff has failed to raise a triable issue of

material fact that Defendant's reason for terminating her
employment was pretextual, her discrimination claim under FEHA
fails.  Defendant's motion for summary judgment on this claim will
be granted.

B. Harassment and Failure to Investigate

California courts also apply federal decisions interpreting
Title VII to analyze FEHA racial harassment claims.  Etter v.
Veriflo, 67 Cal. App. 4th 457, 464 (1999).  A plaintiff may prove
racial harassment by demonstrating that an employer has created a
hostile or abusive work environment.  Meritor Savings Bank v.
Vinson, 477 U.S. 57, 65-67 (1986).  To prevail on a hostile
workplace claim premised on race, a plaintiff must show:  (1) that
he or she was subjected to verbal or physical conduct of a racial
nature; (2) that the conduct was unwelcome; and (3) that the
conduct was sufficiently severe or pervasive to alter the
conditions of the plaintiff's employment and create an abusive work
environment.  Vasquez v. County of L.A., 349 F.3d 634, 642 (9th
Cir. 2003).  A plaintiff must show that the work environment was
abusive from both a subjective and an objective point of view.
Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).
Whether the workplace is objectively hostile must be determined
from the perspective of a reasonable person with the same
fundamental characteristics as the plaintiff.  Id.  Although the
"mere utterance of an . . . epithet which engenders offensive
feelings in an employee" does not alter the employee's terms and
conditions of employment sufficiently to create a hostile work
environment, "when the workplace is permeated with 'discriminatory
intimidation, ridicule, and insult,'" such an environment exists.

20

Meritor, 477 U.S. at 65, 67. Neither "simple teasing," "offhand comments," nor "isolated incidents" alone constitute a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Further, "even if a hostile working environment exists, an employer is only liable for failing to remedy harassment of which it knows or should know." Fuller, 47 F.3d at 1527.

Plaintiff fails to provide evidence of conduct constituting racial harassment sufficient to create a hostile work environment. She alleges stray remarks and offhand comments which do not rise to the level of a hostile work environment. Furthermore, as soon as Plaintiff informed Ms. Weiss of her view that the number of her patient changes per shift was based on racial animus, Ms. Weiss investigated and found that Plaintiff's reassignments were typical. Therefore, Plaintiff has failed to raise a triable issue of material fact on her claim of harassment based upon race. Summary judgment will be granted in favor of Defendant on this claim.

Furthermore, because Plaintiff has not supported her FEHA claims of discrimination or harassment, her claim of Defendant's failure to prevent discrimination and harassment fails as well. Summary judgment will be granted in favor of Defendant on this claim.

C. Retaliation

In order to establish a prima facie claim of retaliation under FEHA, plaintiffs must prove that they engaged in protected activity, their employer subjected them to adverse employment action, and there was a causal link between the protected activity and the employer's action. Iwekaoqwu v. City of Los Angeles, 75 Cal. Appellant. 4th 803, 814 (1999). A causal link requires direct

evidence of causation or a showing that the defendant knew of the
protected activity and that the temporal proximity between the
protected activity and the adverse action was "very close." Clark
County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (per
curiam); Maurey v. Univ. of Southern Cal., 87 F. Supp. 2d 1021,
1033 (C.D. Cal. 1999). Once plaintiffs establish a prima facie
case of retaliation, defendants have the burden of showing a
legitimate, nonretaliatory reason for the adverse action. Scotch
v. Art Institute of California, 173 Cal. App. 4th 986, 1021 (2009).
If defendants meet this burden, plaintiffs must then provide
evidence that the reason was pretextual. Id.

   Plaintiff has established the first two requirements for a
retaliation claim. The letter she gave to Ms. Weiss complaining of
the allegedly discriminatory or harassing conduct of M/S unit staff
was a protected activity. Her placement on medical leave and
subsequent termination from employment are adverse employment
actions. However, Plaintiff has failed to provide evidence of a
causal link between the letter and Defendant's actions.

   Plaintiff gave the letter to Ms. Weiss on April 13, 2007. On
the same day, Plaintiff informed Ms. Weiss of her claims, including
that she and Dr. Silver were being stalked, that he was afraid of
the stalker and that she had been stalked by two men for over nine
years. This intervening event negates any inference that
Plaintiff's complaint caused the subsequent adverse action. Ms.
Weiss' request that Plaintiff be evaluated by a mental health
professional to determine whether she was fit for duty as a nurse
was reasonable given Plaintiff's claims. After a doctor in EMC's
Occupational Health Clinic evaluated Plaintiff, concluded she was

not fit for duty, and referred her for a psychiatric evaluation, it
was reasonable for Ms. Weiss to place her on medical leave and
insist that she obtain a psychiatric evaluation before being
permitted to return to work.  That the doctors that Plaintiff
consulted on her own disagreed with the evaluations of Drs.
Petersen, Zhalkovksy, Kirz is not evidence that Ms. Weiss'
insistence on Plaintiff's clearance for work by a mutually agreed-
upon mental health professional was unwarranted.  The unrebutted
evidence shows that Defendant's termination of Plaintiff's
employment was based upon her failure to comply with Ms. Weiss'
request.

Because Plaintiff has failed to establish a prima facie case
of retaliation, summary judgment on this claim will be granted in
favor of Defendant.

IV. Termination in Violation of Public Policy

Under California law, the termination of an employee is
tortious when it violates a fundamental public policy.  Tameny v.
Atlantic Richfield Co., 27 Cal. 3d 167, 176 (1980); Gantt v. Sentry
Ins., 1 Cal. 4th 1083, 1090 (1992).  A plaintiff must show that the
public policy is delineated in a constitutional or statutory
provision, or in administrative regulations that serve a statutory
objective.  Green v. Ralee Engineering Co., 19 Cal. 4th 66, 79-80
(1998).  The policy must inure to the benefit of the public rather
than merely serving the interests of the individual.  Esberg v.
Union Oil Co., 28 Cal. 4th, 262, 272-73 (2002).

In her FAC, Plaintiff alleges that her wrongful termination
claim is predicated upon the policy expressed in California
Government Code §§ 8547-8547.12, the California Whistleblower

Protection Act, in that Defendant retaliated against her for bringing discriminatory practices to light.  The Whistleblower Protection Act protects state employees who report improper governmental activity from retaliation.  Cal. Gov't Code § 8547.2; State Bd. of Chiropractic Examiners v. Sup. Ct., 45 Cal. 4th 963, 967 (2009).  Plaintiff was not a state employee and, as indicated above, she has failed to provide evidence that Defendant took any action in retaliation for her April 13, 2007 letter.  Absent any retaliation by Defendant, any claim for wrongful termination based on whistle blowing fails.  See Esberg, 28 Cal. 4th at 273 (failure to establish a statutory or constitutional violation precludes a tortious discharge claim).  Summary judgment will be granted in favor of Defendant on the claim for wrongful termination in violation of public policy.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.  Judgment shall enter in favor of Defendant. Each party shall each bear its own costs of action.


IT IS SO ORDERED.

Dated: February 4, 2010                 _____
                                         CLAUDIA WILKEN
                                         United States District Judge

24

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

OPHELIA LEE,

Plaintiff,

v.

EDEN MEDICAL CENTER et al,

Defendant.

_____/

Case Number: CV08-05740 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 4, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ophelia Lee
11 Belden Place, #506
San Francisco, CA 94104

Dated: February 4, 2010

Richard W. Wieking, Clerk
By: Ronnie Hersler, Deputy Clerk

United States District Court
For the Northern District of California